**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ALEX W. NEWTON and CURTIS W. GORDON, Jr., | : | |
| Plaintiffs, | : | |
| v. | : | CA 1:12-00205-KD-C |
| BP P.L.C., et al., | : | |
| Defendants. | : | |

<u>**REPORT AND RECOMMENDATION**</u>

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on the plaintiffs' motion to remand[1] this matter to the Circuit Court of Baldwin County, Alabama and memorandum of law in support (Doc. 5), filed April 29, 2012; defendants BP America Inc. and BP Corporation North America Inc.'s (collectively, "BP") response (Doc. 7),[2] filed May 14, 2012; and the plaintiffs' reply (Doc. 10), filed May 18, 2012.   After careful consideration of the parties' briefing and the pleadings and case file, it is **RECOMMENDED** that the motion be **GRANTED**, and that this matter be **REMANDED** to the Circuit Court of Baldwin County, Alabama.[3]

---

[1]        In that motion, the plaintiffs also assert that state court proceedings against the same defendants regarding an adjacent parcel of property (*see, e.g.,* Doc. 5 at 12 ("These parallel cases involve a community of interests; specifically, the plaintiffs in both cases allege their property was wrongfully taken and used by the defendants.")) also support, or provide an alternative reason, for the Court to "abstain from hearing the present matter and remand this case to state court" (*id.*).

[2]        The notice of removal (Doc. 1) provides that a third defendant, BP p.l.c., had not been served as of the date this case was removed to federal court (*see id.* at 2).

[3]        The first page of the motion to remand alerted the Court to the plaintiff's request for oral argument.   In the submission order, the undersigned acknowledged this request and stated that the Court was "certainly willing to entertain argument on the motion.   But the

<u>**Background**</u>

The plaintiffs, two Alabama residents, alleged to be the owners of two parcels of real property located in Baldwin County, Alabama, filed this action, for trespass on real property, against BP and several fictitious defendants in the Circuit Court of Baldwin County on February 24, 2012, alleging four counts: trespass, negligence, wantonness, and nuisance.   As BP points out, in their notice of removal,

> [i]n their complaint, plaintiffs seek an unspecified amount of compensatory damages, remediation damages and punitive damages . . . . Plaintiffs allege that the BP Defendants "intentionally invaded the subject property and took possession of same without authorization from Plaintiffs," "moved equipment, machinery and structures on or across the subject property," "caused hazardous materials and hazardous waste to be brought on to and stored on the subject property" and engaged in an "intentional, reckless and wanton trespass," *[s]ee* Complaint [Doc. 1-1], at ¶¶ 9-11, 15.   According to plaintiffs, they have suffered "property damage, diminution of value of real property, lost revenue and profit and loss of use and enjoyment of real property."   *Id.* at ¶¶ 16, 30.   Elsewhere in the complaint, plaintiffs allege that the BP Defendants' actions have caused "extensive property damage" and "damage and destruction of the subject property."   *Id.* at ¶¶ 19, 21, 24, 26.

(Doc. 1, ¶ 11.)

<u>**Discussion**</u>

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court."   *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated*

---

plaintiff's reply brief should clearly explain how the Court's decision on the motion will benefit from oral argument."   (Doc. 6 at 2.)   The reply did not.   The undersigned's review of the issues presented, moreover, has not revealed how oral argument will benefit the Court.

*on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).    And a federal court may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.    28 U.S.C. § 1332(a)(1).    Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . .    Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."    *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *cf. D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction.") (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)).

Therefore, removing defendants must establish the propriety of removal under section 1441 and, for that reason, "bear[] the burden of establishing the existence of federal jurisdiction."    *Brown v. Kabco Builders, Inc.*, Civil Action 07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)).    Here, the burden is on BP to establish both complete diversity—that is, the plaintiffs are diverse from every defendant, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted)—and that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement.    *See Fitzgerald v. Besam Automated Entrance Sys.*, 282 F. Supp. 2d 1309, 1314 (S.D. Ala. 2003). The defendants have made a satisfactory showing (*see* Doc. 1, ¶¶ 1-8)—and the plaintiffs

3

do not contest the fact (*see* generally Docs. 5 & 10)—that complete diversity exists.   *See Triggs*, 154 F.3d at 1287.   Therefore, this Court must only determine whether the amount in controversy is satisfied and then consider the plaintiff's alternative argument for remand (*see supra*, note 1).

"When, as here, damages are not specified in the state court complaint, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement."   *Pate v. State Farm Mut. Auto. Ins. Co.*, No. 3:10cv223/MCR/EMT, 2010 WL 3372195, at *1 (N.D. Fla. Aug. 25, 2010) (citations and internal quotation marks omitted); *see Fitzgerald*, 282 F. Supp. 2d at 1314 ("When the state court complaint is indeterminate, then an intermediate burden[—preponderance of the evidence—]is placed upon the removing defendant since there is no representation by plaintiff's counsel that would be entitled to deference.") (citing *Tapscott*, 77 F.3d at 1356-57).   And because defendants removed this case under the first paragraph of Section 1446(b)  (*see* Doc. 1, ¶ 14), the Eleventh Circuit's decision in *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010), guides the undersigned's analysis.   *See id.* at 1062 (characterizing that case as a "§ 1446(b) first-paragraph case[ ] in which the plaintiff does not make a specific damages demand").[4]   In *Roe*, the Eleventh Circuit stated:

---

[4]      This distinction—that the amount-in-controversy showing required turns on which provision of the removal statute applies to a particular case—continues to be followed by district courts in this Circuit.   *See, e.g., Rola v. Wal-Mart Stores, Inc.*, No. 6:11–cv–468–Orl–28DAB, 2011 WL 3156672, at *5-6 (M.D. Fla. June 29, 2011) ("The showing required turns on the particular provision relied upon as the basis for the removal") (citing *Roe*, 613 F.3d at 1061 n.4), *report &*

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden.   In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought.   [*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir. 2010).]   Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy.   *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").
>
> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable.   *See id.* at 754.   Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount."   *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)); *see also Williams*[ *v. Best Buy Co., Inc.*], 269 F.3d [1316,] 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met).   Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

613 F.3d at 1061-62.

The Eleventh Circuit further stated that the approach announced in *Roe* "is consistent with those of other circuits," *id.* at 1062, specifically citing, *inter alia*, two Fifth Circuit cases—*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999), and *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000).   *See* 613 F.3d at 1062-63.   *Luckett* and

---

*recommendation adopted*, 2011 WL 3111965 (M.D. Fla. July 26, 2011); *cf. Wilson v. Chester Bross Constr. Co.*, No. CA 11–0020–KD–C, 2011 WL 1380052, at *12 (S.D. Ala. Apr. 12, 2011) ("[T]he first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section.") (citing *Pretka*, 608 F.3d at 760).

*Gebbia* both demonstrate that "the Fifth Circuit has repeatedly acknowledged the power of district court judges to appraise the worth of plaintiffs' claims based on the nature of the allegations stated in their complaints."  *Id.* at 1063; *see Luckett*, 171 F.3d at 298; *Gebbia*, 233 F.3d at 833; *cf. Purdiman v. Organon Pharms. USA, Inc.*, Civil Action No. 2:08-CV-0006-RWS, 2008 WL 686996, at *2 (N.D. Ga. Mar. 12, 2008) (pre-*Roe*) (citing both *Luckett* and *Gebbia*, and holding that "[a]lthough the Complaint excludes any reference to the amount of damages Plaintiff has sustained as a result of Defendant's allegedly tortious conduct, after full review and consideration, the Court concludes that is it apparent from the factual allegations in the Complaint that the amount in controversy in this action exceeds $75,000").  Thus, at least in the context of a Section 1446(b) first-paragraph removal case in which the plaintiff does not make a specific damages demand—such as this one—a district court should employ "its judicial experience or common sense in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy."  *Roe*, 613 F.3d at 1063.

Similar to the motion to remand at issue in *Spottswood v. Stewart Title Guaranty Co.*, Civil Action 10-0109-WS-B, 2010 WL 1539993 (S.D. Ala. Apr. 16, 2010), which this Court denied, the traditional remand issue presented in this motion is also "framed strictly in terms of the sufficiency of proof as to the amount in controversy prong[,]" *id.* at *2; *compare id.* ("The Spottswoods do not represent (much less offer evidence) that the amount in controversy is actually below the $75,000 threshold, nor do they deny that they are claiming damages of at least that amount.  Instead, the thrust of the Motion is

plaintiffs' contention that defendant has failed to establish the jurisdictional amount by a preponderance of the evidence, but is improperly relying on sheer speculation as to amount in controversy."), *with* Doc. 5 at 11 ("There is no basis for this Court to exercise jurisdiction over this matter given the pure speculation of value the BP Defendants seek to attached to plaintiffs' claims.").

In an attempt to offer more than pure speculation, BP has offered property appraisals, dated October 1, 2010, for the two parcels—listing a combined value of $964,000—it obtained from the website of the Baldwin County Revenue Commissioner (Doc. 1-2 at 2-3).   While the plaintiffs correctly contend that courts in Alabama "have held that tax assessment records are 'not admissible to establish the fair market value of property'" (Doc. 5 at 10 (quoting *Presley v. B.I.C. Constr., Inc.*, 64 So. 3d 610, 621 (Ala. Civ. App. 2009) (citations omitted)[5]), the exact determination of fair market value is not the

---

[5]    In *Presley*, the Court of Civil Appeals relied on Dean Gamble's evidence treatise, which explains:

> Alabama courts have long embraced the principle that generally the tax assessing authority's evaluation is not relevant when offered to prove market value.   The rationale underlying this general exclusionary rule is that 'it is notorious that properties are not assessed at anything like true value or market value.'   This principle, however, results in the exclusion of such a tax record only when offered to prove market value."

*Id.* (citation omitted); *compare id.*, *with id.* at 626-27 ("[E]ven assigning less weight to Joy Presley's opinion as to the value of the house as constructed *in recognition of the fact that a tax assessment is generally lower than the fair market value of property*, I believe that the Presleys presented sufficient evidence from which the finder of fact could determine that the fair market value of the house as constructed was less than it would have been had B.I.C. adhered to the Presleys' plans, as called for by the contract.") (Thompson, J., concurring and dissenting) (emphasis added).

issue before this Court.   Instead, the Court's task is to use its "judicial experience and common sense" to determine "whether the case stated in [the plaintiffs'] complaint meets federal jurisdictional requirements."   *Roe*, 613 F.3d at 1062.

In undertaking this task, the undersigned is mindful that *Roe* was an Alabama wrongful death case, and as such, it "should not be extended to non-wrongful death cases **merely** on the basis that punitive damages are sought."   *Butler v. Charter Communications, Inc.*, 755 F. Supp. 2d 1192, 1195 (M.D. Ala. 2010) (emphasis added); *see also SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F. Supp. 2d 1245, 1255 (S.D. Ala. 2010) (noting that a court "is not free simply to assume" that a plaintiff is "likely to be awarded substantial punitive damages"); *id.* at 1256 ("At bottom, SUA relies on a visceral impression that, since the state complaint includes a lengthy ad damnum clause, the amount in controversy must exceed $75,000.   This approach may have superficial appeal, but the jurisdictional inquiry is much more searching.   It remains possible in this case, as in most, that the successful plaintiffs will be awarded more than $75,000.   Possibility, however, is not probability and will not support federal jurisdiction.").[6]

---

[6]         The undersigned has previously noted, however, that

[w]hile this Court has applied *Roe*'s mandate to district court judges to use "judicial experience and common sense" to determine that the jurisdictional minimum was met in a wrongful death case, *see White-Spunner Constr., Inc. v. Zurich Am. Ins. Co.*, Civil Action No. 10-0158-WS-C, 2010 WL 3489956, at *3 (S.D. Ala. Aug. 30, 2010), [this judicial officer] does not believe that *Roe*'s "common-sense approach" must be limited to such cases.   *See* 613 F.3d at 1063-64 ("This common-sense approach to deciding a jurisdictional challenge **is especially useful** in cases brought under Alabama's Wrongful Death Act, in which no compensatory damages may be recovered." (emphasis added)).

In *Butler*, however, the court relied on more than a claim for punitive damages. There, after overruling the plaintiff's evidentiary objections,[7] the court relied on property appraisal records provided by the defendant.   *See* 755 F. Supp. 2d at 1195-96 (after noting that "[t]he Defendants are not required to 'prove the amount in controversy beyond all doubt or to banish all uncertainty about it[,]'" the court relied on "copies of records, which are stated to be from the Macon County Revenue Commissioner's office, [the accuracy of which were not disputed by the plaintiff, and which] indicate[d] that Butler ha[d] suffered a property loss of approximately $110,000, even without consideration of the contents of the dwelling" to establish that the amount in controversy exceeded $75,000, exclusive of interest and costs) (quoting *Pretka*, 608 F.3d at 754); *cf. Hauer v. Priceline.com Inc.*, No. C 08–02608 JSW, 2008 WL 3286980, at *2 n.1 (N.D.

---

*Overton v. Wyeth, Inc.*, No. CA 10–0491–KD–C, 2010 WL 4717048, at *4 n.3 (S.D. Ala. Oct. 29, 2010) (rejecting the plaintiff's argument that *Roe* should be limited to wrongful death actions), *report & recommendation adopted*, 2010 WL 4716972 (S.D. Ala. Nov 15, 2010).

[7]     In *Butler*, the court noted that

[i]n *Pretka*, the [Eleventh Circuit] made it clear that it is permissible for Defendants to make "specific factual allegations establishing jurisdiction and . . . support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka*, 608 F.3d at 754. . . .   *Pretka* also re-affirmed the idea that the remand determination may require "summary-judgment-type" evidence.   *Id.* at 755.   A court can consider otherwise inadmissible evidence in ruling on a Rule 56 motion for summary judgment as long as that evidence is reducible to admissible form.   *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005).

*Id.* at 1196; *see also Spottswood*, 2010 WL 1539993, at *4 n.11 ("The Court is not deciding whether or not to admit the ACG report into evidence, but is simply evaluating whether to consider it for purposes of a preliminary ruling.   Plaintiffs identify no authority to support their apparent belief that strict compliance with all prerequisites of admissibility is necessary before an exhibit may be considered on a motion to remand.")

Cal. Aug. 6, 2008) ("Here, Plaintiff has submitted [an offer to compromise] to prove the amount in controversy is less than the jurisdictional amount, not to prove Priceline's liability for his claims.  Therefore, the Court finds that this evidence is admissible."); *accord Carroll v. Stryker Corp.*, 658 F.3d 675, 681 n.2 (7th Cir. 2011); *Homer v. GMAC Mortgage, LLC*, Civil No. 3:10cv1937 (JBA), 2011 WL 3859719, at *3 (D. Conn. Aug. 31, 2011).

But, in *Butler*, the plaintiff sought "unspecified compensatory and punitive damages for the **loss** of her home, the contents of her home, and mental anguish[,]" 755 F. Supp. 2d at 1194 (emphasis added), and the court used the property appraisal records to show that

> the year **before** the fire which destroyed her home, Butler's home and land together were appraised at $114,000.  The land alone was appraised at $4,000.  [Another defendant], in its separately-filed opposition to the Motion to Remand, [moreover,] present[ed] an appraisal document to establish that the value of the land **after** the fire was appraised at $4,000.

*Id.* at 1195 (emphasis added).  Based on such documentation, that court was able to comfortably conclude, without resorting to speculation, that the value of the **lost** home alone was approximately $110,000, well above the minimum amount-in-controversy. *See id.* at 1196.

Similarly, in *Spottswood*, the issue was a "diminution in property value resulting from the loss of 7 feet of Mobile Bay frontage[,]" 2010 WL 1539993, at *3 n.9, and the defendant presented a report that was

prepared by a licensed, certified real estate appraiser, [and] included an
opinion that "generally sites along the bay are both priced and purchased
on the basis of their bay front footage."   Based on that foundation, the [ ]
report examined several comparable sales, including three properties
"located directly south of the Spottswood property [that] were all vacant
sites with 91 ± front feet (FF) on the bay."   For those three comparables,
the [ ] report noted, the average sales price was $16,850 per front foot.   In
light of that fact, the [ ] report concluded with an express "opinion that the
loss of the 7.03 feet of Mobile Bay frontage will reduce the value of the
Spottswood's [sic] property by at least $75,000."   [And the Court surmised
that, i]f, as the [ ] report demonstrates, real property in the vicinity of the
Spottswoods' parcel is bought and sold on the basis of its front footage and
the average recent sales price for comparable parcels is $16,850 per front
foot, then simple arithmetic confirms that a loss of more than seven front
feet would be accompanied by a diminution in value of greater than
$100,000 (inasmuch as $16,850/foot x 7 feet = $117,950).   This figure is
well in excess of the $75,000 amount needed to give rise to federal diversity
jurisdiction.

*Id.* at *3; *see also id.* at *4 (concluding that "Stewart is not asking this Court to divine the

existence of jurisdiction by looking to the stars, or engaging in unbridled guesswork and

reckless conjecture to reach a preordained conclusion.   To the contrary, Stewart has

come forward—contemporaneously with its Notice of Removal—with an expert report

that is both concrete and directly on-point, providing a valid evidentiary basis for

defendant's contention that the amount in controversy in this lawsuit objectively

exceeds the sum or value of $75,000, exclusive of interest and costs.")

In both *Butler* and *Spottswood*, the courts were able to rely on external evidence to

objectively determine that <u>the actual losses</u> claimed by the plaintiffs more likely than not

exceeded the jurisdictional requirement.   Here, however, the undersigned only knows

that the Baldwin County Revenue Commissioner valued the parcels of land at close to $1

11

million as of October 1, 2010.   But the land itself was not lost.   *See Butler*, 755 F. Supp.

2d at 1194-96.   Likewise, while the allegations asserted in the complaint—*e.g.*, that BP

"caused hazardous materials and hazardous waste to be brought on to and stored on the

subject property"; engaged in an "intentional, reckless and wanton trespass"; and that

BP's actions resulted in "extensive property damage"—seem grievous, the Court has no

objective evidence regarding the extent of those damages.   *See Spottswood*, 2010 WL

1539993, at *3-4.

Thus, given the opacity of the complaint's allegations, this Court "is not free

simply to assume[,]" *SUA*, 751 F. Supp. 2d at 1255, that the damages alleged by the

plaintiffs more likely than not exceed the jurisdictional requirement simply because the

land itself appears, according to one source, to be highly valuable, or because the

damages alleged grievous, *see id.* (Such an "approach may have superficial appeal, but

the jurisdictional inquiry is much more searching.   [And i]t remains possible in this

case, as in most, that the successful plaintiffs will be awarded more than $75,000.

Possibility, however, is not probability and will not support federal jurisdiction.").[8]

---

[8]      Although the undersigned has determined that the motion should be granted on the basis of the amount-in-controversy issue, the plaintiffs' alternative—more creative—ground for removal merits some discussion.

As alluded to above, the plaintiffs have requested that this Court "abstain from hearing the present matter and remand this case to state court" because a state court matter is already proceeding against BP regarding an adjacent parcel of property.   (*See* Doc. 5 at 11-16.)   And while there are several (three, potentially four) distinct federal abstention doctrines, *see, e.g.*, *Crisante v. Coats*, No. 8:11–CV–2007–T–17TBM, 2012 WL 1327208, at *4 & n.6 (M.D. Fla. Apr. 17, 2012) (setting forth and discussing the distinct doctrines), the plaintiffs focus solely on abstention pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

### Conclusion

After careful consideration of the parties' briefing, the pleadings, and the case file, and for the reasons set forth above—it has not been proven by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement of $75,000—it is **RECOMMENDED** that the motion (Doc. 5) be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Baldwin County, Alabama.

---

Regardless of the abstention doctrine invoked, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River*, 424 U.S. at 813, and "'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them; is not lost on this Court," *Crisante*, 2012 WL 1327208, at *4 (quoting *Colorado River*, 424 U.S. at 817).

Quite simply, as BP points out (*see* Doc. 7 at 7-8), because the plaintiffs solely seek damages in this matter, this Court lacks the power to remand this matter to state court solely on the basis of abstention:

> The Supreme Court has held that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996) (emphasis added). In the instant action, Plaintiff seeks "general, consequential, punitive, and special damages." The Court therefore lacks power to remand this case under the *Younger* or *Colorado River* abstention doctrines. *See Quackenbush*, 517 U.S. at 731 ("Because this was a damages action, we conclude that the District Court's remand order was [ ] unwarranted.").

*Meadow Valley Contractors, Inc. v. C & S Eng'rs, Inc.*, No. CV–11–8154–PCT–GMS, 2012 WL 1681982, at *1 (D. Ariz. May 14, 2012) (citations omitted or modified); *see also Procknow v. Wabash Metal Prods., Inc.*, No. C 11–03589 WHA, 2011 WL 6057747, at *1 (N.D. Cal. Dec. 6, 2011); *Oddo Dev. Co., Inc. v. City of Leawood, Kan.*, No. 08-2616-JWL, 2009 WL 975139, at *2 (D. Kan. Apr. 9, 2009); *Ambrose v. New England Ass'n of Schs. & Colleges, Inc.*, 100 F. Supp. 2d 48, 49 n.1 (D. Me. 2000) (all for same premise: that requests for money damages preclude remand pursuant to an abstention doctrine); *cf. Andrews v. Link-Belt Constr. Equip.*, Civil Action No. 3:06cv465, 2006 WL 2548190, at *2 (E.D. Va. Sept. 1, 2006) ("Even if abstention was warranted in this case, remand is not a remedy that is available based on abstention principles alone.") (citing *Quackenbush*, 517 U.S. at 721 ("[W]hile we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.")).

13

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 8th day of June, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[9] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.   Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[9]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   FED. R. CIV. P. 72(b)(2).